UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------

BAIS YAAKOV OF SPRING VALLEY,

                              Plaintiff,

    - against -                                   13-CV-4564 (CS)

RICHMOND, THE AMERICAN INTERNATIONAL      **OPINION**
UNIVERSITY IN LONDON, INC.,

                              Defendant.
--------------------------------------------------------------

Appearances:

Aytan Yehoshua Bellin, Esq.
Bellin & Associates, LLC
White Plains, New York
*Counsel for Plaintiff*

Roger Furman, Esq.
Los Angeles, California
*Counsel for Plaintiff*

Joan M. Gilbride
Elizabeth A. Butler
Kaufman, Borgeest & Ryan, LLP
New York, New York
*Counsel for Defendant*

Seibel, J.

      On March 12, 2014, I granted in part and denied in part Defendant's motion for summary judgment in a bench ruling.  (*See* Minute Entry 3/12/2014.)  This opinion sets forth the reasons for those decisions, which I also explained at the March 12, 2014 bench ruling.

1

I. **Background**

The following facts are based on the parties' Local Civil Rule 56.1 statements and supporting materials, and are undisputed except as noted. I set forth only those facts relevant to my decision.

Plaintiff is a high school located in Monsey, New York. (*See* P's 56.1 ¶ 1.)[1] Defendant is an international accredited university, based in London, that provides undergraduate and graduate studies. (Atkinson Aff. ¶ 2.)[2]

On November 27, 2012, Plaintiff received a one-page fax from Defendant about an informational session Defendant planned to hold. (P's 56.1 ¶ 3; Complaint, (Doc. 1), Ex. A ("Richmond Fax").) At the top of the fax, the question, "Are your students interested in an International College Education?" appears. (*See* Richmond Fax.) The fax then lists the date, time and place of the informational session, notes that "[a] Richmond Representative will be available to discuss the application process, scholarships and undergraduate programs," and provides contact information so students can RSVP for the informational session. (*Id.*) The bottom of the fax provides some background on Defendant:

> Richmond is a private independent American university accredited in the United States . . . . Richmond is also accredited in the UK . . . . Richmond's academic program, which encompasses business, communications, international relations, journalism, and the arts, reflects the American tradition of broad-based core studies. Living and studying together, our students from over 100 countries are ready for a world where the ability to communicate effectively across national and cultural boundaries is as valuable as traditional academic achievement. A Richmond education offers a global perspective. It examines the patterns of similarities and differences between cultures and provides students with an intercultural focus.

(*Id.*)

---

[1] "P's 56.1" refers to Plaintiff's Response to Defendant's Rule 56.1 Statement and Objections to Defendant's Atkinson Affidavit. (Doc. 33.)

[2] "Atkinson Aff." refers to Affidavit of Nicholas Michael Atkinson. (Doc. 27.)

During a typical informational session, Nicholas Michael Atkinson, Defendant's Director of Admissions for North America, discusses various aspects of a Richmond education, including financial aid and the application process. (P's 56.1 ¶ 9.) During the informational sessions, Mr. Atkinson also answers any questions attendees may have. (*Id.* ¶ 10.) If, during an informational session, it becomes apparent to Mr. Atkinson that Richmond does not appear to be the proper school for an attendee, he will so advise the attendee. (*Id.* ¶ 11.)

On July 1, 2013, Plaintiff filed a complaint asserting claims under both the Telephone Consumer Protection Act ("TCPA") and New York General Business Law ("GBL") § 396-aa. (Doc. 1.) On January 10, 2014, after limited discovery, Defendant filed a motion for summary judgment on both claims. (Doc. 26.)

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in

support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

## III. Discussion

### A. TCPA Claim

The TCPA prohibits sending "an unsolicited advertisement" to a fax machine, subject to certain exceptions that do not apply in this case. 47 U.S.C. § 227(b)(1)(C). The TCPA defines

an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id*. § 227(a)(5). Defendant contends that the fax it sent to Plaintiff does not constitute an advertisement, because it was informational in nature and did not advertise the commercial availability or quality of any goods or services.  (*See* D's Mem. 3.)[3]

"In resolving the matter of whether the faxes at issue constitute advertising it is appropriate for the Court to adopt a reasonable construction of the TCPA promulgated by the FCC." *Bais Yaakov of Spring Valley v. Alloy, Inc*. ("*Alloy*"), 936 F. Supp. 2d 272, 282 (S.D.N.Y. 2013) (internal quotation marks and alterations omitted).  Relevant here, the FCC deems "facsimile messages that promote goods or services even at no cost, such as . . . free consultations or seminars" to be unsolicited advertisements under the TCPA.  *Rules and Regulations Implementing the TCPA*, 21 F.C.C. Rcd. 3787, 3814 (2006).  The FCC includes faxes promoting free seminars in the definition of unsolicited advertisements, because "[i]n many instances, 'free' seminars serve as a pretext to advertise commercial products and services. . . . Based on this, it is reasonable to presume that such [facsimile] messages describe the 'quality of any property, goods, or services.'" *Id*. (quoting 47 U.S.C. § 227(a)(5)).

While the FCC's rule could be read to categorize all faxes promoting free seminars as unsolicited advertisements, many courts require plaintiffs to show that the defendant advertised, or planned to advertise, its products or services at the seminar.  *See N. Suburban Chiropractic Clinic, Ltd. v. Merck & Co.*, No. 13-CV-3113, 2013 WL 5170754, at *3 (N.D. Ill. Sept. 13, 2013) ("[F]axes promoting a free seminar may constitute an 'unsolicited advertisement' since

---

[3] "D's Mem." refers to Memorandum of Law in Support of Defendant Richmond the American International University in London, Inc.'s Motion for Summary Judgment.  (Doc. 30.)

free seminars are often a pretext to market products or services.") (internal quotation marks omitted); *St. Louis Heart Center, Inc. v. Forest Pharms., Inc.*, No. 12-CV-2224, 2013 WL 1076540, at *4 (E.D. Mo. Mar. 13, 2013) (same); *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12-CV-4978, 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012) (same); *see also Phillip Long Dang v. XLHealth Corp.*, No. 09-CV-1076, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) (fax advertising free seminar not "unsolicited advertisement" where it was "not pretext for a commercial enterprise").  This interpretation of the FCC's rule not only conforms to the statutory text, *see Alloy*, 936 F. Supp. 2d at 282, but also furthers Congress's apparent intent in passing the TCPA:  if Congress enacted the TCPA to prevent people from receiving unwanted faxes advertising a product or service, it follows that Congress would also be concerned with individuals receiving faxes advertising a seminar that advertised a product or service.  *See Physicians Healthsource*, 2012 WL 4120506, at *2 ("Congress enacted the TCPA to prevent the shifting of advertising costs to recipients of unsolicited fax advertisements.") (citing H.R. Rep. No. 317 (1991)).

Here, I cannot say as a matter of law that the fax Defendant sent to Plaintiff is not an advertisement under the TCPA.  The fax promotes a seminar at which Defendant's representatives discuss many aspects of a Richmond education, (*see* P's 56.1 ¶¶ 9-10), Richmond alumni frequently discuss their positive experiences, (*see* Bellin Decl., Ex. B ("Atkinson Dep."), at 73-74),[4] and a video is played in which current Richmond students explain why they chose Richmond and how satisfied they are with their decision, (*id.* at 78-82).  Indeed, "[t]he purpose [of the informational sessions] is to encourage [students] to apply to Richmond if they think that Richmond is going to be a good fit for them."  (*Id.* at 83.)  From all of this, a jury could

---

[4] "Bellin Decl." refers to Declaration of Aytan Y. Bellin.  (Doc. 32.)

reasonably conclude that Defendant advertises the service it sells (undergraduate and graduate education) at its informational sessions, which would render Defendant's fax promoting one of these sessions an unsolicited advertisement under the TCPA. Additionally, the language at the bottom of the fax touts the university's quality. (*See* Richmond Fax.)

Defendant presents a series of unavailing arguments to avoid the conclusion that this fax can be regarded as an advertisement. To the extent Defendant argues that the academic programs it sells do not constitute goods or services because Defendant is a nonprofit organization, (*see* D's Mem. 5), this argument is unsupported by the TCPA and the FCC's interpretation of the statute, *see* 21 F.C.C. Rcd. at 3810 n.156 ("We also emphasize that we are not carving out an exemption for tax-exempt nonprofits."). To the extent Defendant argues that the fax does not constitute an unsolicited advertisement because Defendant did not attempt to sell admission at the seminars themselves (*i.e.* because an individual cannot simply buy her way into the university), such an argument is irrelevant under the TCPA because Defendant promoted the quality of its academic programs at these seminars. *See* 47 U.S.C. § 227(a)(5) ("'[U]nsolicited advertisement' means any material advertising the commercial availability or quality of any . . . services."). Further, that not everybody gets admitted cannot mean the product is not commercial. As Plaintiff points out, (*see* P's Opp. 2),[5] the same is true of advertisements for mortgages or insurance, and they are obviously commercial. As with mortgages and insurance, individuals whose applications are approved will pay Defendant to attend the university. To the extent Defendant argues that the fax is merely informational because it simply informs the recipient that a seminar will take place, (*see* D's Mem. 5), Defendant misreads the caselaw and the FCC's rule. "The FCC has noted that faxes containing only 'information, such as industry

---

[5] "P's Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. (Doc. 34.)

news articles, legislative updates, or employee benefit information' are not prohibited by the TCPA." *Alloy*, 936 F. Supp. 2d at 282 (quoting 21 F.C.C. Rcd. at 3814).  Here, however, the only information in the fax, other than background about Defendant, is that Defendant will hold a seminar at which Defendant will inform attendees about the quality of the product Defendant sells – its academic programs.  This is not the type of information protected by the FCC's carve-out for purely informational faxes.  *See id*. at 282-83.

   B. <u>GBL § 396-aa Claim</u>

GBL § 396-aa prohibits "initiat[ing] the unsolicited transmission of telefacsimile messages promoting goods or services for purchase by the recipient of such messages."  N.Y. Gen. Bus. § 396-aa(1).  Defendant contends that because the fax at issue here does not "promot[e] goods or services for purchase" by the fax's recipient, Plaintiff's guidance counselors, the fax does not violate GBL § 396-aa.  (*See* D's Mem. 14.)  Defendant's argument is squarely in line with this Court's holding in *Alloy*, 936 F. Supp. 2d at 284.  Nevertheless, Plaintiff argues that the term "recipient" in GBL § 396-aa should include the ultimate intended recipients of the fax – here, the students – and not just the person or entity that actually received the fax on a fax machine.  (*See* P's Mem. 15-17.)  Under Plaintiff's proposed interpretation, Plaintiff's claim would be viable because Plaintiff's students, unlike Plaintiff's guidance counselors who received the fax, can purchase Defendant's services.

I will decline Plaintiff's invitation to alter this Court's previous interpretation of GBL § 396-aa, because Plaintiff's proposed interpretation is inconsistent with the statute's plain language, *see Alloy*, 936 F. Supp. 2d at 284, and Plaintiff cites no cases interpreting GBL § 396-aa in line with Plaintiff's proposed interpretation.  Moreover, several provisions of GBL § 396-aa indicate that "recipient" means the person who receives the fax on his/her fax machine,

not the ultimate intended recipient of the information in the fax.  For instance, GBL § 396-aa(2) mandates that "[e]very [fax] sent to a recipient shall contain a notice that informs the recipient of the ability . . . to prevent the transmission of future unsolicited [faxes]," N.Y. Gen. Bus. § 396-aa(2), and GBL § 396-aa(3) provides a right of action to "[a]ny person who has received a [fax] in violation of [GBL § 396-aa]," *id.* § 396-aa(3).  It would not make sense for the New York State legislature to require an opt-out notice for, and provide a right of action to, the ultimate intended recipients of a fax, because ultimate intended recipients are not inconvenienced by a fax sent to somebody else's fax machine and should not be able to make decisions about whether faxes are sent to other people's fax machines in the future.  (*See* Bellin Decl., Ex. E ("Governor's Bill Jacket"), at 8 ("[L]engthy transmissions of unsolicited offers to sell goods and services can significantly interfere with the right of owners of recipient telefacsimile machines to receive or send normal business communications.").)

### IV.  Conclusion

For the foregoing reasons, I denied Defendant's summary judgment motion as to Plaintiff's claim under the TCPA, but granted the motion as to Plaintiff's claim under GBL § 396-aa.

Dated: September 16, 2014
      White Plains, New York

*Cathy Seibel*
_____
CATHY SEIBEL, U.S.D.J